1  SETH ARONSON (S.B. #100153)
   saronson@omm.com
2  CAROLYN KUBOTA (S.B. #113660)
   ckubota@omm.com
3  TAMAR BRAZ (S.B. #264080)
   tbraz@omm.com
4  O'MELVENY & MYERS LLP
   400 South Hope Street
5  Los Angeles, CA  90071-2899
   Telephone:  (213) 430-6000
6  Facsimile:   (213) 430-6407

7  Attorneys for Defendant
   THOMAS C. TEKULVE, JR.
8

9              **UNITED STATES DISTRICT COURT**

10            **CENTRAL DISTRICT OF CALIFORNIA**

11               **WESTERN DIVISION**

12

13 SECURITIES AND EXCHANGE          Case No.  CV11-05316R (AGRx)
   COMMISSION,
14                                  **ANSWER**
               Plaintiff,
15                                  **DEMAND FOR JURY TRIAL**
          v.
16
   PETER L. JENSEN AND THOMAS
17 C. TEKULVE, JR.,

18            Defendants.

19

20        Defendant Thomas C. Tekulve, Jr. hereby answers the Complaint filed

21 by the Securities and Exchange Commission ("the Commission") on June 24, 2011

22 ("the Complaint").  Except as expressly admitted herein, Mr. Tekulve denies any

23 and all allegations set forth in the Complaint.  Mr. Tekulve further answers the

24 numbered paragraphs in the Complaint as follows:

25

26        1.    Paragraph 1 contains arguments and legal conclusions to which

27 no response is required.  To the extent that these allegations require a response, Mr.

28

Tekulve admits that plaintiffs allege claims against himself and Mr. Peter L. Jensen under Sections 20(b), 20(d)(1) and 22(a) of the Securities Act of 1933, 15 U.S.C. §§ 77t(b), 77(t)(d)(1) and 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e), 21A(a)(1)(A) and 27(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e), 78u-1(a)(1)(A) and 78aa(a).  Mr. Tekulve is without knowledge or information sufficient to form a belief as to the truth of the allegations made against Mr. Jensen in paragraph 1, and therefore denies those allegations.  Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 1.

2.     Paragraph 2 contains arguments and legal conclusions to which no response is required.  To the extent that these allegations require a response, Mr. Tekulve admits that he resides in the Central District of California and/or transacts business in this district.  Mr. Tekulve is without sufficient knowledge or information as to Mr. Jensen's place of residence or as to whether Mr. Jensen transacts business in this district, and on that basis denies those allegations.  Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 2.

3.     Mr. Tekulve admits that, on August 11, 2008, Basin Water, Inc. ("Basin") announced that it was restating its financial results for the year ending December 31, 2007, as well as "related financial information for the years ended December 31, 2007 and 2006," and that this restatement was issued on February 10, 2009.  Mr. Tekulve is without sufficient information or knowledge as to the truth of the allegations made against Mr. Jensen in paragraph 3, and therefore denies those allegations.  Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 3.

4.     Mr. Tekulve is without sufficient knowledge or information as to the allegations in paragraph 4, and on that basis denies those allegations.

5.     Paragraph 5 contains arguments and legal conclusions to which no response is required.  To the extent that a responsive pleading is required, Mr.

1    Tekulve admits that the Commission seeks the remedies outlined in the fifth

2    sentence of paragraph 5.  To the extent that the allegations set forth in paragraph 5

3    are made against Mr. Jensen, Mr. Tekulve is without knowledge or information

4    sufficient to form a belief as to the truth of the allegations, and therefore denies

5    those allegations.  Except as so admitted, Mr. Tekulve denies each and every

6    allegation in paragraph 5.

7              6.     Mr. Tekulve is without sufficient knowledge or information as

8    to the allegations in paragraph 6, and on that basis denies those allegations.

9              7.     Mr. Tekulve admits to the allegations in paragraph 7 except for

10    the allegation in the second sentence.  With respect to the second sentence in

11    paragraph 7, Mr. Tekulve admits that, as CFO, he had responsibility for, among

12    other things, Basin's financial structure and organization.  Except as so admitted,

13    Mr. Tekulve denies each and every allegation in paragraph 7.

14             8.     Mr. Tekulve denies that Basin's stock is presently quoted on

15    OTC Link.  Except as so denied, Mr. Tekulve admits paragraph 8.

16             9.     Mr. Tekulve admits that on February 10, 2009, Basin filed a

17    restatement on Form 10-K/A that amended the Form 10-K for the year ended

18    December 31, 2007 and "amended and restated consolidated financial statements

19    and related financial information for the years ended December 31, 2007 and 2006,

20    including the financial results in each of the quarterly periods in 2007 and 2006."

21    Mr. Tekulve further admits that he resigned in October 2008.  Additionally, Mr.

22    Tekulve admits the figures contained in the: (1) "reported system sales;" (2)

23    "reported total revenue"; and (3) "reported gross profit" cells in the 2006 and 2007

24    charts in paragraph 9 were reported in Basin's filings for years 2006 and 2007.  To

25    the extent that the allegations set forth in paragraph 9 are made against Mr. Jensen,

26    Mr. Tekulve is without knowledge or information sufficient to form a belief as to

27    the truth of the allegations, and therefore denies those allegations.  Except as so

28    admitted, Mr. Tekulve denies each and every allegation in paragraph 9.

10.   Mr. Tekulve is without sufficient knowledge or information as to the allegations in paragraph 10, and on that basis denies those allegations.

11.   Mr. Tekulve admits that he received an annual salary of $125,000 in 2005, that his salary increased to $151,250 in the second quarter of 2006, and that his salary later increased to $200,000.  Mr. Tekulve also admits that he received a $100,000 bonus in 2007 and a $50,000 bonus in 2008.  In addition, he admits that he was granted shares of Basin common stock and options for shares of Basin common stock.  He admits that he did not reimburse Basin for these monies, stock, or stock options.   Mr. Tekulve denies that there was ever a period when he was "causing Basin to fraudulently inflate its revenues."  He also denies the existence of "false filings."  Except as so admitted, Mr. Tekulve is without sufficient information or knowledge to form a belief regarding the allegations in paragraph 11 and on that basis denies those allegations.

12.   Mr. Tekulve admits that, on December 22, 2005, he faxed Martin Benowitz a letter titled "Agreement for purchase of two Basin Water ion exchange units," and that he later emailed Mr. Jensen informing him that he had faxed this letter.  He admits that there exists a document purporting to be the e-mail described in the third sentence of paragraph 12.  He also admits the allegation in the fourth sentence in paragraph 12.  In addition, Mr. Tekulve admits that he received a fax of a signed letter from Mr. Benowitz on or about December 29, 2005.  Mr. Tekulve admits that the revised letter had a designated space for Mr. Jensen to sign, but Mr. Tekulve is without knowledge or information sufficient to form a belief as to the truth of the allegation that Mr. Jensen never signed the letter, and on that basis denies that allegation.  Except as so admitted, Mr. Tekulve is without sufficient information or knowledge to form a belief as to the allegations in paragraph 12 and on that basis denies those allegations.

13.   Mr. Tekulve admits that the document referred to as the Opus Letter in paragraph 14 included the following language:

1            a.      "This letter sets forth the mutual understanding between

2                        Opus Trust, Inc. ("Buyer") and Basin Water, Inc.

3                        ("Seller"), with respect to the sale and purchase of two

4                        Basin Water 1,000 gpm regenerable ion exchange units."

5            b.      "The Buyer will purchase the Units for a purchase price

6                        of $750,000 per unit for a total of $1.5 million.  The

7                        payment terms of the purchase consist of:  Ten percent

8                        (10%) payment from Buyer to Seller upon execution of

9                        this letter . . . Buyer to be granted by Seller, shares of the

10                      stock of Bion, a wholly owned subsidiary of Buyer, equal

11                      to five percent (5%) of that company, or 500,000 shares";

12                      and "The remaining unpaid balances outstanding (and any

13                      qualifying accrued interest due, if any) from Buyer to

14                      Seller will be paid no later than two (2) years from the

15                      date of the execution of the definitive agreement."

16            c.      "Definitive Purchase Agreement.  A Definitive Purchase

17                      Agreement (the "Purchase Agreement") will be drafted

18                      and will be in a form customary for transactions of this

19                      type and will include, in addition to the matters set forth

20                      in this letter, customary representations, warranties,

21                      indemnities, covenants and other matters typically found

22                      in purchase agreements.  The agreement will be prepared

23                      by the Seller and be subject to review by the Buyer and

24                      their counsel."

25        Mr. Tekulve also admits that Basin received a $150,000 payment for

26  the Opus Trust transaction in December 2005, but is without sufficient knowledge

27  or information as to whether Mr. Benowitz or Opus Trust made the payment and on

28  that basis denies that allegation.  Except as so admitted, Mr. Tekulve denies each

1   and every allegation in paragraph 13.

2           14.     Mr. Tekulve is without sufficient information or knowledge as

3   to the allegations in paragraph 14 and therefore denies those allegations.

4           15.     To the extent that the allegations set forth in paragraph 15 are

5   made against Mr. Jensen, Mr. Tekulve is without sufficient information or

6   knowledge as to those allegations and therefore denies those allegations.  To the

7   extent that the allegations set forth in paragraph 15 are made against Mr. Tekulve,

8   Mr. Tekulve denies each and every allegation in paragraph 15.

9           16.     Mr. Tekulve admits paragraph 16.

10          17.     Mr. Tekulve admits that he sent an email to Mr. Jensen on June

11  16, 2006 with a copy of the Opus Letter that had been redlined by Doug Hansen,

12  and that the e-mail contained the following language: "In Paragraph 8, Doug

13  indicates issuing the stock after the balance is paid would be an accounting problem

14  in coming up with a value for Bion today - which would reduce today's revenues.

15  Doug's suggestion is to issue the Bion stock today - but hold it in escrow until the

16  full balance of the note is paid"; "Also Peter, to help with IRR issues, we could

17  extend the final payment from 2 years to 3 years"; and "I've included the changes I

18  would need if we ended up just using this summary agreement for the auditors -

19  plus, we'd have to have Benowitz identify that the units he owns are the Salinas

20  Well 06 and 20 units - as of March 30th."  Except as so admitted, Mr. Tekulve

21  denies each and every allegation in paragraph 17.

22          18.     Mr. Tekulve admits that he sent Mr. Benowitz an email on June

23  20, 2006 and attached a "revised draft of the agreement."  Mr. Tekulve also admits

24  that the June 20 draft identified Units 15 and 108 and the June 16 draft identified

25  Units 06 and 20 in the Allocation of Payments section.  Except as so admitted, Mr.

26  Tekulve denies each and every allegation in paragraph 18.

27          19.     Mr. Tekulve admits that there is a document titled "Unit

28  Purchase Agreement" which stated "This unit purchase agreement (the

1  "Agreement") entered into as of the 30th of March 2006" (the "Opus Agreement").

2  Mr. Tekulve is without sufficient information or knowledge as to the remaining

3  allegations in paragraph 19, and therefore denies those allegations.

4         20.    Mr. Tekulve admits that he e-mailed the "Unit Purchase

5  Agreement" to Mr. Benowitz on June 22, 2006 and that his date book contains an

6  entry on June 22, 2006 that states "I finalized the Benowitz deal & sent email off,

7  will sign in am."  Except as so admitted, Mr. Tekulve is without sufficient

8  information or knowledge as to the allegations in paragraph 20, and on that basis

9  denies these allegations.

10         21.    Mr. Tekulve admits that the Unit Purchase Agreement contained

11  the following language:

12           a.    "This Unit Purchase Agreement (the "Agreement")

13                entered into as of the 30th day of March, 2006 ("Effective

14                Date"), by and between BionBasin, Inc., a Delaware

15                corporation ("BION"), and the Opus Trust, Inc., a Nevis

16                corporation ("Buyer")."

17           b.    "BION is the owner of two (2), standard ion exchange

18                units (one identified as the Salinas Unit #15 at 700 gallons

19                per minute ("gpm" [sic] and the other identified as the

20                Salinas Unit #108 at 1,100 gpm (collectively the

21                "Units.")"

22           c.    "Buyer and Basin agree that should Buyer default in

23                Buyer's obligation to purchase the units within the time

24                and in the matter specified in this agreement, Basin shall

25                be released from all obligations in law or equity to sell the

26                units to Buyer.  Buyer and Basin agree that it would be

27                impractical or extremely difficult to fix the actual

28                damages suffered by Basin because of such default, that

1                         the total amount of the progress payments shall constitute

2                         a reasonable estimate and agreed stipulation of damages

3                         in the event of such default by the Buyer, that in the event

4                         of Buyer's breach, Basin shall be entitled to retain the

5                         progress payments as liquidated damages, and that, in

6                         consideration of the payment of such liquidated damages,

7                         Basin shall be deemed to have waived all other claims for

8                         damages or relief at law or in equity, and Basin shall have

9                         no other right or cause of action against Buyer or

10                         otherwise arising from said default."

11           d.       "Not later than the Marketing Cutoff Date (as defined in

12                         Section 2.1 below), Buyer shall pay BION the balance of

13                         the Purchase Price … which shall be One Million Three

14                         Hundred and Fifty Thousand Dollars ($1,350,000.00) plus

15                         any accrued and not yet paid Interest"; and "Commencing

16                         on the Effective Date and continuing for a period of three

17                         (3) years thereafter (the "Marketing Cutoff Date"), BION

18                         shall use reasonable good faith efforts to market the Units

19                         to clients of BION and Basin (collectively "Clients") . . . .

20                         Notwithstanding the foregoing provisions of Sections 1.2

21                         and 1.3, or before the Marketing Cutoff Date, the Buyer

22                         may contact BION in writing and request a two-year

23                         extension of the Marketing Cutoff Date ("Extended

24                         Marketing Cutoff Date").  Such request shall be granted

25                         upon a $250,000 payment by buyer to BION."

26               Except as so admitted, Mr. Tekulve denies each and every allegation in

27 paragraph 21.

28              22.     Mr. Tekulve admits that Basin recognized $1,500,000 in

1    revenue from the transaction with Opus Trust and that this revenue constituted

2    slightly more than 40% of revenues reported for the first quarter in 2006.  Mr.

3    Tekulve is without sufficient information or knowledge as to whether the Opus

4    Letter or a "definitive purchase agreement" had not been signed as of March 30,

5    2006 and on that basis denies those allegations.  Except as so admitted, Mr.

6    Tekulve denies each and every allegation in paragraph 22.

7         23.    Mr. Tekulve admits that, on June 23, 2006, he signed a letter to

8    Singer Lewak Greenbaum & Goldstein, LLP ("Singer Lewak"), Basin's auditors,

9    that contained the language quoted in the second sentence of paragraph 23 and

10   language similar to the language described in 23(a)-(f), qualified by the statement

11   that the statements in the letter were "to the best of our knowledge and belief."  Mr.

12   Tekulve is without sufficient information or knowledge as to whether Mr. Jensen

13   signed this letter and on that basis denies that allegation.  Except as so admitted,

14   Mr. Tekulve denies each and every allegation in paragraph 23.

15        24.    Mr. Tekulve admits that Basin received a $150,000 down

16   payment in the Opus Trust transaction and did not receive further payments for the

17   systems.  Mr. Tekulve, however, is without sufficient information as to whether the

18   payment was made by Mr. Benowitz or Opus Trust, and on that basis denies this

19   allegation.  In addition, Mr. Tekulve admits that SAB 104 addresses criteria for

20   recognition of revenue in certain situations, and that the items identified in

21   paragraph 24 are some of those criteria.  Except as so admitted, Mr. Tekulve denies

22   each and every allegation in paragraph 24.

23        25.    Mr. Tekulve admits that, on June 26, 2006, Basin issued a first

24   quarter earnings release and that it contained the headline and language quoted in

25   paragraph 25 as well as a statement that the company would provide more detail

26   regarding its first quarter results in a conference call and web cast to be held at 1:30

27   p.m. Pacific Time that day.  Mr. Tekulve also admits that Basin filed the press

28   release as an Exhibit to Form 8-K with the Commission and that he signed the

Form 8-K.  In addition, Mr. Tekulve admits that he drafted part of the script for the earnings call.   Mr. Tekulve is without sufficient information or knowledge to form a belief as to whether the press release was issued at about 5:00 a.m. Pacific Time or whether he drafted part of the script "earlier that day" and on that basis denies those allegations.  Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 25.

26.     Mr. Tekulve admits that Basin filed a Form 10-Q for Basin's first quarter of 2006 on June 26, 2006 and that he signed this form as Basin's CFO. He also admits that the Form 10-Q stated that Q1 2006 unaudited system sales totaled $3,091,000 and that Q1 2006 unaudited revenues totaled $3,703,000.  He admits that these figures include the $1,500,000 in revenue from the Opus Trust transaction.  Mr. Tekulve admits the fifth sentence in paragraph 26.  Mr. Tekulve admits that the Form 10-Q does not state: "41% of its purported revenues and 76% of its profits were derived from a purported sale to a single customer for which revenues were not in fact properly recognized."  Mr. Tekulve is without sufficient information or knowledge as to the allegations concerning Mr. Jensen in paragraph 26 and on that basis denies those allegations.  Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 26.

27.     Mr. Tekulve admits that he signed a document dated June 26, 2006, which includes language similar to that described in paragraph 27(a)-(d).  In addition, Mr. Tekulve admits that a signature purporting to belong to Mr. Jensen appears on a similar document dated June 26, 2006.  Mr. Tekulve is without sufficient information or knowledge as to the allegations made against Mr. Jensen in paragraph 27, and on that basis denies those allegations.  Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 27.

28.     Mr. Tekulve admits that Basin filed a registration statement on Form S-8 with the Commission, dated May 15, 2006, that registered approximately 6.7 million shares of its common stock, including those shares issuable pursuant to

Basin's equity incentive, stock option, and employee stock purchase plans.  This Form S-8 incorporated by reference the documents described in the second sentence.  Mr. Tekulve also admits that he signed this Form S-8 and that this Form S-8 purportedly bears Mr. Jensen's signature.  Mr. Tekulve is without sufficient information or belief as to whether Mr. Jensen actually signed the Form S-8 or caused the filing and on that basis denies those allegations.  Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 28.

29.    Mr. Tekulve admits that, on August 14, 2006, Basin issued its second quarter 2006 earnings release and that it contained the headline and language quoted in paragraph 29.  Mr. Tekulve also admits that Basin filed the press release as an Exhibit to Form 8-K with the Commission and that he signed the Form 8-K.  Mr. Tekulve is without sufficient information or knowledge as to whether Basin issued its earnings release "early in the morning" and on that basis denies that allegation.  Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 29.

30.    Mr. Tekulve admits that on August 14, 2006, he signed a letter to Singer Lewak that contained the language quoted in the second sentence of paragraph 30 and language similar to the language described in paragraph 30(a)-(f), qualified by the statement that the statements in the letter were "to the best of our knowledge and belief."  Mr. Tekulve is without sufficient information or knowledge as to whether Mr. Jensen signed this letter and on that basis denies that allegation.  Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 30.

31.    Mr. Tekulve admits that Basin filed a Form 10-Q for Basin's second quarter of 2006 on August 14, 2006 and that he signed this Form 10-Q in his capacity as Basin's CFO.  He further admits that the Form 10-Q stated that Q2 2006 unaudited system sales totaled $7,258,000 and unaudited total revenues totaled $8,666,000 for the six months ending June 30, 2006.  He admits that these

figures included the $1,500,000 in revenue from the Opus Trust transaction. Additionally, Mr. Tekulve admits that the Form 10-Q did not state: "17% of its purported revenues and 31% of its profits were derived from a purported sale to a single customer for which revenues were not in fact properly recognized."  Mr. Tekulve states that he is without sufficient information or knowledge as to the allegations concerning Mr. Jensen or whether the Form 10-Q was filed at about noon Pacific Time, and on that basis denies those allegations.  Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 31.

32.     Mr. Tekulve admits that he signed a document dated August 14, 2006 which includes language similar to that described in paragraph 32(a)-(d).  In addition, Mr. Tekulve admits that a signature purporting to belong to Mr. Jensen appears on a similar document dated August 14, 2006.  Mr. Tekulve is without sufficient information or knowledge as to the allegations made against Mr. Jensen in paragraph 32, and on that basis denies those allegations.  Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 32.

33.     Mr. Tekulve admits that he participated in a conference call with Mr. Jensen on August 14, 2006, and that he drafted some of the script for the call. Additionally, Mr. Tekulve admits that Mr. Jensen made the statements quoted in paragraph 33.  Mr. Tekulve is without sufficient information or knowledge to form a belief as to whether the call took place at about 1:30 p.m. Pacific Time or whether he drafted some of the script "that morning" and on that basis denies those allegations.  Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 33.

34.     Mr. Tekulve is without sufficient information or knowledge as to the allegations in paragraph 34 and therefore denies those allegations.

35.     Mr. Tekulve admits that there is a document purporting to be an e-mail dated August 18, 2007 from Pat Kelly to Mr. Jensen that included the language described and quoted in paragraph 35.  Except as so admitted, Mr.

1    Tekulve is without sufficient information or knowledge as to the allegations in

2    paragraph 35 and on that basis denies those allegations.

3            36.    Mr. Tekulve is without sufficient information or knowledge as

4    to the allegations in paragraph 36 and therefore denies those allegations.

5            37.    Mr. Tekulve admits that there is a document, dated September

6    12, 2006, purporting to be a memorandum from Mr. Sabzali to Mr. Jensen that

7    included the following language: "The reason for this note is to state the caveats

8    that will apply to the purchase order Thermax Inc. will be sending to Basin Water

9    later this month . . . . Purchase order issued by Thermax Inc. to Basin Water is

10   predicated on Thermax Inc. receiving a similar order from PDVSA . . . . If PDVSA

11   fails to issue a purchase order to Thermax by November 30, 2006, this purchase

12   order will be cancelled and replaced with a new order from Thermax."   Except as

13   so admitted, Mr. Tekulve is without sufficient information or knowledge to form a

14   belief as to the allegations in paragraph 37 and on that basis denies those

15   allegations.

16           38.    Mr. Tekulve is without sufficient information or knowledge as

17   to the allegations in paragraph 38 and on that basis denies the same.

18           39.    Mr. Tekulve admits that there is a document purporting to be a

19   purchase order, dated September 26, 2008, which stated "Purchase order subject to

20   terms and conditions stated on Addendum 'A'" and that Addendum "A" included

21   the following language:  "T&C: TBA i. Agreed that the T&C to Basin will reflect

22   the T&C's on PDVSA's PO to Thermax Inc."  Except as so admitted, Mr. Tekulve

23   is without sufficient information or knowledge as to the allegations in paragraph 39

24   and on that basis denies those allegations.

25           40.    Mr. Tekulve admits that, on September 28, 2006, he received an

26   e-mail from Pat Kelly regarding the "Thermax, Inc. Order" that he forwarded to

27   Doug Hansen.  Attached to that e-mail is an attachment that included a purchase

28   order and a page entitled "Addendum 'A.'"  Mr. Tekulve admits that the purchase

order contained the language: "Purchase Order subject to terms and conditions stated on Addendum 'A.'"  Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 40.

41.    Mr. Tekulve admits that, on November 14, 2006, Basin issued its third quarter 2006 earnings release, that it contained the headline and language quoted in paragraph 41, and that it quoted Mr. Jensen.  Mr. Tekulve also admits that Basin filed the press release as an Exhibit to Form 8-K with the Commission and that he signed the Form 8-K.  Mr. Tekulve is without sufficient information or knowledge as to form a belief as to whether the earnings release was issued during the "morning" and therefore denies this allegation.  Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 41.

42.    Mr. Tekulve admits that Basin filed a Form 10-Q for Basin's third quarter of 2006 on November 14, 2006, and that he signed this Form 10-Q in his capacity as Basin's CFO.  Mr. Tekulve further admits that the Form 10-Q reported unaudited quarterly system sales of $3,936,000 and unaudited total revenues of $4,846,000.  He admits that these figures included $451,000 in revenue from the Thermax transaction.  Mr. Tekulve is without sufficient knowledge or information regarding the allegations concerning Mr. Jensen and on that basis denies those allegations.  Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 42.

43.    Mr. Tekulve admits that the Form 10-Q reported unaudited system sales of $11,194,000 and unaudited total revenue of $13,512,000 for the first nine months of 2006.  He admits that these figures included $1,500,000 in revenue from the Opus Trust transaction and $451,000 in revenue from the Thermax transaction.  Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 43.

44.    Mr. Tekulve admits that he signed a document dated November 14, 2006, which includes the language similar to that described in paragraph 44(a)-

(d).   In addition, Mr. Tekulve admits that a signature purporting to belong to Mr. Jensen appears on a similar document dated November 14, 2006.  Mr. Tekulve is without sufficient information or knowledge as to the allegations concerning Mr. Jensen in paragraph 44, and on that basis denies those allegations.   Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 44.

45.   Mr. Tekulve admits that he participated on a conference call on November 14, 2006, together with Mr. Jensen and Mr. Stark.  Additionally, Mr. Tekulve admits that he drafted some of the script for this call and that Mr. Jensen made the statement quoted in paragraph 45.  Mr. Tekulve is without sufficient information or knowledge regarding whether the conference call took place at about 1:30 p.m. Pacific Time or whether he drafted some of the script "that morning" and on that basis denies those allegations.  Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 45.

46.   Mr. Tekulve admits that Basin did not receive any payments from Thermax pursuant to the September 28, 2006 purchase order nor did it ship any units to Thermax pursuant to the September 28, 2006 order.  Except as so admitted, Mr. Tekulve is without sufficient information or knowledge as to form a belief regarding the allegations in paragraph 46 and on that basis denies those allegations.

47.   Mr. Tekulve admits that on March 29, 2007, Basin issued its 2006 fiscal year earnings release and filed it with the Commission as an Exhibit to Form 8-K.  Mr. Tekulve admits that he signed this Form 8-K.  In addition, Mr. Tekulve admits this press release contains the headline and language quoted in paragraph 47.  Mr. Tekulve is without sufficient information or belief as to whether the earnings release was filed in the morning, and on that basis denies this allegation.  Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 47.

48.   Mr. Tekulve admits that he participated in a conference call on

March 29, 2007, together with Mr. Jensen and Mr. Stark, and that he drafted some of the script for the conference call.   Mr. Tekulve admits that Mr. Jensen made the statement quoted in paragraph 48.  Mr. Tekulve is without sufficient knowledge or information as to whether this call took place on 1:30 Pacific Time or whether he drafted some of the script "that morning" and on that basis denies those allegations. Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 48.

49.     Mr. Tekulve admits that Mr. Jensen made the statement quoted in the first sentence of paragraph 49 during the conference call.  Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 49.

50.     Mr. Tekulve admits that on March 30, 2007, he signed a letter to Singer Lewak that contained the language quoted in the second sentence of paragraph 50 and language similar to the language described in 50(a)-(f), qualified by the statement that the statements in the letter were "to the best of our knowledge and belief."  Mr. Tekulve is without sufficient information or knowledge as to the remaining allegations in paragraph 50 and on that basis denies those allegations.

51.     Mr. Tekulve denies each and every allegation in paragraph 51.

52.     Mr. Tekulve admits that on April 2, 2007, Basin filed its annual report on Form 10-K for fiscal year 2006 ending December 31, 2006 with the Commission and that he signed this Form 10-K.  Mr. Tekulve is without sufficient information or knowledge regarding the allegations concerning Mr. Jensen in paragraph 52 and on that basis denies those allegations.  Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 52.

53.     Mr. Tekulve admits that Basin's fiscal year 2006 Form 10-K reported system sales of $13,861,000 and total revenues of $17,114,000 for the year ended December 31, 2006.  He admits that these revenues included $1,500,000 from the transaction with Opus Trust and $451,000 from the transaction with Thermax.  Mr. Tekulve admits that this Form 10-K did not state: "13% of its

purported system sales and 11% of its revenues were derived from the sales to Opus Trust and Thermax, for which revenues were not in fact properly recognized." Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 53.

54.     Mr. Tekulve admits that he signed a document dated April 2, 2007, which includes language similar to that described in paragraph 54(a)-(d).  In addition, Mr. Tekulve admits that a signature purporting to belong to Mr. Jensen appears on a similar document dated April 2, 2007.  Mr. Tekulve is without sufficient information or knowledge regarding the allegations concerning Mr. Jensen in paragraph 54 and on that basis denies those allegations.  Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 54.

55.     Mr. Tekulve admits that, from time to time, Basin placed a unit with a client pursuant to a lease arrangement.  He admits that, from time to time, Basin sold systems rather that lease them and that Basin recognized revenue from the sales.  Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 55.

56.     Mr. Tekulve admits that Charles Litt, a consultant, helped facilitate transactions between Basin and other companies.  Mr. Tekulve is without sufficient information or knowledge regarding the remaining allegations in paragraph 56 and therefore denies those allegations.

57.     Mr. Tekulve admits that VL Capital, LLC ("VL Capital") was registered in Delaware as an LLC on June 29, 2007.  Mr. Tekulve is without sufficient information or knowledge as to the remaining allegations in paragraph 57, and on that basis denies those allegations.

58.     Mr. Tekulve admits that he participated in internal Basin discussions together with Mr. Jensen about VL Capital.  Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 58.

59.     Mr. Tekulve admits that Basin sold and delivered ten operating

1    treatment systems to VL Capital before the end of Q2 2007.  Mr. Tekulve also

2    admits that Basin recorded $3.8 million in revenue from the sale of these systems,

3    and that these revenues represented more than half of Basin's reported quarterly

4    revenues.  Mr. Tekulve is without sufficient information or knowledge as to Mr.

5    Jensen's awareness of the revenue recognition and on that basis denies that

6    allegation.  Except as so admitted, Mr. Tekulve denies each and every allegation in

7    paragraph 59.

8            60.    Mr. Tekulve denies each and every allegation set forth in

9    paragraph 60.

10           61.    Mr. Tekulve admits that a document titled "Equipment Purchase

11   Facility Commitment" dated June 29, 2007, contains the language quoted in

12   paragraph 61 (excepting the bracketed words).  Mr. Tekulve is without sufficient

13   information or belief as to whether he saw this letter and on that basis denies this

14   allegation.  Except as so admitted, Mr. Tekulve denies each and every allegation in

15   paragraph 61.

16           62.    Mr. Tekulve admits that Douglas Hansen prepared a

17   memorandum, or "white paper", which Mr. Hansen emailed to Mr. Tekulve on

18   August 8, 2007 and Mr. Tekulve later edited.  Mr. Tekulve also admits that the

19   "white paper" was discussed with Basin's auditors and shared with Basin's Audit

20   Committee.   Mr. Tekulve, however, is without sufficient information or knowledge

21   as to whether the "white paper" was discussed with the Audit Committee on August

22   9, 2007 and on that basis denies that allegation.  Mr. Tekulve admits that the

23   contents of the "white paper" included the following language: "Collectability is

24   reasonably assured . . . VLC has already placed the $500,000 in escrow as of June

25   29, 2007"; and "BW meets the criteria set forth in SAB 104 with respect to the

26   recognition of revenue in the period in which an arrangement is executed, including

27   the existence of persuasive evidence of an arrangement, the occurrence of delivery

28   a fixed sales price, and reasonable assurance of collectability.  Accordingly revenue

1  from the transaction with VLC is properly recognized in the second quarter of

2  2007."  Mr. Tekulve admits that the "white paper" did not include language stating

3  that "Basin would be making payments commencing immediately, on July 1, 2007,

4  which payments totaled a greater amount than the $500,000 down payment payable

5  by VL Capital to Basin on April 1, 2008."  Except as so admitted, Mr. Tekulve

6  denies each and every allegation in paragraph 62.

7         63.    Mr. Tekulve is without sufficient knowledge or belief regarding

8  the allegations in this paragraph and on that basis denies those allegations.

9         64.    Mr. Tekulve admits that Basin issued its second quarter 2007

10  earnings press release on August 14, 2007 and that it contained the headline and

11  language quoted and described in paragraph 64.  Mr. Tekulve also admits that Basin

12  filed the press release as an Exhibit to Form 8-K with the Commission on August

13  14, 2007 and that he signed the Form 8-K.  Mr. Tekulve is without sufficient

14  information or belief as to whether the press release was issued "late in the

15  evening" and on that basis denies this allegation.  Except as so admitted, Mr.

16  Tekulve denies each and every allegation in paragraph 64.

17         65.    Mr. Tekulve admits that Basin filed a Form 10-Q for Basin's

18  second quarter of 2006 on August 14, 2007, and that he signed this Form 10-Q in

19  his capacity as Basin's CFO.  Mr. Tekulve admits that the 10-Q included the sales

20  and revenue numbers described in the third sentence in paragraph 65 and the block

21  quotation in the fifth sentence of paragraph 65.  Mr. Tekulve admits that these

22  revenues included the $3.8 million from the sale of systems to VL Capital.  Mr.

23  Tekulve is without sufficient information or knowledge as to the allegations

24  concerning Mr. Jensen in paragraph 65 and therefore denies those allegations.

25  Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph

26  65.

27         66.    Mr. Tekulve admits that he signed a document dated August 14,

28  2007, which includes language similar to that described in paragraph 66(a)-(d).  In

addition, Mr. Tekulve admits that a signature purporting to belong to Mr. Jensen appears on a similar document dated August 14, 2007.  Mr. Tekulve is without sufficient information or knowledge as to the allegations concerning Mr. Jensen in paragraph 66 and on that basis denies those allegations.  Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 66.

67.    Mr. Tekulve admits that he participated on a conference call on August 14, 2007, together with Mr. Jensen and Mr. Stark.  Mr. Tekulve admits that he drafted some of the script for this call.  Mr. Tekulve admits that the script contains the language quoted in paragraph 67 and that neither Mr. Jensen nor Mr. Tekulve stated during the call: "the revenue from these purported sales was, in fact, improperly recognized."   Mr. Tekulve is without sufficient information or knowledge as to whether the conference call took place at about 1:30 p.m. Pacific Time or whether he drafted some of the script "the previous day" and on that basis denies those allegations.  Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 67.

68.    Mr. Tekulve admits that Water Services Solutions, LLC ("WSS") has a certificate of formation dated September 27, 2007.  Except as so admitted, Mr. Tekulve is without sufficient information or knowledge regarding the allegations in paragraph 68 and on that basis denies those allegations.

69.    Mr. Tekulve admits to receiving the letter described in paragraph 69 and that this letter bears a signature purporting to be that of Mr. Ward, but Mr. Tekulve is without sufficient information or knowledge as to whether or not Mr. Ward signed the letter and on that basis denies this allegation.  Except as so denied, Mr. Tekulve admits to the allegations in paragraph 69.

70.    Mr. Tekulve admits that Basin recognized $2.1 million in revenue in Q3 2007 for the WSS transaction.  Mr. Tekulve is without sufficient knowledge and information as to whether the revenue was recognized based on the "percentage of completion" method and on that basis denies this allegation.  Except

1    as so admitted, Mr. Tekulve denies each and every allegation in paragraph 70.

2          71.    Mr. Tekulve admits that Mr. Hansen prepared a "white paper"

3    dated October 31, 2007 that Mr. Tekulve edited and then e-mailed to Mr. Hansen

4    on November 1, 2007.  Mr. Tekulve also admits that this "white paper" was

5    provided to Singer Lewak.  Mr. Tekulve admits that the "white paper" included the

6    following language: "BW meets the criteria set forth in SAB 104 with respect to the

7    recognition of revenue in the period in which an arrangement is executed including

8    the existence of persuasive evidence of an arrangement the occurrence of

9    substantial construction and scheduled delivery at specific sites, a fixed sales price,

10    and reasonable assurance of collectability.  Accordingly revenue from the

11    transaction with WSS is properly recognized in the third quarter of 2007" and "The

12    purchaser, WSS, is a special purpose entity formed for this transaction and is

13    backed by a National City, a large Chicago bank . . . . Additionally, a deposit of

14    $25,000 has been placed in an escrow account."  Mr. Tekulve is without sufficient

15    information or knowledge as to whether the "white paper" was prepared pursuant to

16    a request by Basin's auditor, whether National City was based in Cincinnati, Ohio,

17    whether Basin did not actually receive the $25,000 escrow deposit, or whether the

18    National City financing did not actually occur, and on that basis denies those

19    allegations.  Except as so admitted, Mr. Tekulve denies each and every allegation in

20    paragraph 71.

21          72.    Mr. Tekulve admits that on November 13, 2007, he signed a

22    letter to Singer Lewak that contained the language quoted in the second sentence of

23    paragraph 72 and language similar to the language described in paragraph 72(a)-(h),

24    qualified by the statement that the statements in the letter were "to the best of our

25    knowledge and belief."  Except as so admitted, Mr. Tekulve denies each and every

26    allegation in paragraph 72.

27          73.    Mr. Tekulve admits that Basin filed a Form 10-Q for its third

28    quarter of 2007 on November 13, 2007 and that he signed this Form 10-Q in his

capacity as Basin's CFO.  Mr. Tekulve admits that the Form 10-Q reported unaudited system sales of $3,773,000 and unaudited total revenues of $5,346,000. He admits that these figures included $2.1 million in revenue from the sale of systems to WSS.  He also admits that the Form 10-Q reported unaudited system sales of $9,901,000 and unaudited total revenues of $13,367,000 for the nine month period ending September 30, and that these figures included both the $3.8 million in revenue from the sale of systems to VL Capital and the $2.1 million in revenue from the sales to WSS.  Mr. Tekulve admits that the $5.9 million total was 60% of Basin's year-to-date reported system sales and 44% of its reported total revenues. Mr. Tekulve is without sufficient information or knowledge regarding the allegations as they relate to Mr. Jensen and on that basis denies those allegations. Except as so admitted, Mr. Jensen denies each and every allegation in paragraph 73.

74.     Mr. Tekulve admits that he signed a document dated November 13, 2007, which includes language similar to that described in paragraph 74(a)-(d). In addition, Mr. Tekulve admits that a signature purporting to belong to Mr. Jensen appears on a similar document dated November 13, 2007.  Mr. Tekulve is without sufficient information or knowledge as to the allegations concerning Mr. Jensen in paragraph 74, and on that basis denies those allegations.  Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 74.

75.     Mr. Tekulve admits that, on November 14, 2007, Basin issued its third quarter earnings release and filed it with the Commission that day as an Exhibit to Form 8-K and that he signed the Form 8-K.  Mr. Tekulve admits the third, fourth, and fifth sentences in paragraph 75.  Mr. Tekulve is without sufficient information or knowledge as to form a belief as to whether the earnings release was issued in "the morning" and on that basis denies this allegation.  Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 75.

76.     Mr. Tekulve admits that he participated in a conference call on November 14, 2007, together with Mr. Stark and Mr. Jensen, and that he helped

draft some of the script for the call.  Additionally, Mr. Tekulve admits the second sentence in paragraph 76.  Mr. Tekulve is without sufficient information or belief as to whether this call took place at about 1:30 p.m. Pacific Time, whether he drafted some of the script "earlier that day," or whether Mr. Jensen and Mr. Stark made changes to the script, and on that basis he denies those allegations.  Mr. Tekulve further admits that he did not state that the transaction was with "an SPE created by Basin for no other purpose than to purchase the Cottonwood systems to boost Basin's revenue."  Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 76.

77.    Mr. Tekulve admits that there is a document dated December 26, 2007 that includes terms of a sale between Basin and WSS.  Mr. Tekulve also admits that his date book entry on December 28, 2007 includes the following entry: "Then will draft agreements for a VLC type contract to 3rd party this deal to get Q4 revenues.  What a pain - but we need revenues."  Mr. Tekulve is without sufficient information or knowledge regarding whether he initiated documentation and therefore denies that allegation.  Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 77.

78.    Mr. Tekulve admits that Basin entered into an agreement with WSS with the language "as of the 26th day of December 2007 and effective as of the same date" and that this document included a term for a purchase price of $1,353,079.00 for an existing system.  Mr. Tekulve admits that he signed this document on behalf of Basin.  Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph 78.

79.    Mr. Tekulve admits that Basin signed an "Agreement to Purchase and Sell" with VL Capital containing the language: "as of the 31st day of December 2007 and on [sic] that same date" and that this document included a term for a purchase price of $763,330.00 for Unit 126.  Mr. Tekulve admits that he signed this document on behalf of Basin.  Except as so admitted, Mr. Tekulve

1    denies each and every allegation in paragraph 79.

2            80.    Mr. Tekulve admits that Basin recognized the revenues

3    described in paragraph 80 for the second WSS and VL Capital agreements using the

4    percentage of completion method.  Except as so admitted, Mr. Tekulve denies each

5    and every allegation in paragraph 80.

6            81.    Mr. Tekulve admits that his date book entry on December 28,

7    2007, includes the following entry: "Then will draft agreements for a VLC type

8    contract to 3rd party this deal to get Q4 revenues.  What a pain - but we need

9    revenues."  Except as so admitted, Mr. Tekulve denies each and every allegation in

10   paragraph 81.

11           82.    Mr. Tekulve admits that on March 17, 2008, he signed a letter to

12   Singer Lewak that contained the language quoted in the second sentence in

13   paragraph 82 (excepting the language in brackets) and language similar to the

14   language described in paragraph 82(a)-(f), qualified by the statement that the

15   statements in the letter were "to the best of our knowledge and belief."  Except as

16   so admitted, Mr. Tekulve denies each and every allegation in paragraph 82.

17           83.    Mr. Tekulve admits that, on March 17, 2008, Basin issued its

18   2007 earnings release containing the headline and language quoted in paragraph 83.

19   Mr. Tekulve also admits that Basin filed the press release with the Commission as

20   an Exhibit to a Form 8-K and that he signed the filing.  Finally, Mr. Tekulve admits

21   that $7.7 million constituted 41% of Basin's reported annual revenue.  Mr. Tekulve

22   is without sufficient information or knowledge as to whether the 2007 earnings

23   release was issued at or around 1:01 p.m., and on that basis denies this allegation.

24   Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph

25   83.

26           84.    Mr. Tekulve admits that Basin filed a Form 10-K for its annual

27   report for fiscal year 2007 on March 17, 2008, and that he signed this Form 10-K in

28   his capacity as Basin's CFO.  Mr. Tekulve admits that this Form 10-K reported

1   total revenues of $18,784,000 and system sales of $13,477,000 for the year ended

2   December 31, 2007.  Mr. Tekulve admits that the 10-K states that VL Capital and

3   WSS accounted for 26% and 14% of those revenues respectively.  Mr. Tekulve also

4   admits that this Form 10-K does not state:  "VL Capital and WSS were SPEs

5   created by Basin for the sole purpose of Basin "selling" them systems on which it

6   would then recognize revenue," "Basin itself was "lending" its own monies to these

7   entities in order to purchase that revenue," or "none of the revenues purportedly

8   received from transactions with VL Capital and WSS were properly recognized."

9   Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph

10  84.

11          85.     Mr. Tekulve admits that he signed a document dated March 17,

12  2008, which includes language similar to that described in paragraph 85(a)-(d).

13  Except as so admitted, Mr. Tekulve denies each and every allegation in paragraph

14  85.

15          86.     Mr. Tekulve admits that he participated in a conference call

16  together with Mr. Stark on March 17, 2008 and that he edited some of the script of

17  that call.   Mr. Tekulve admits the quoted dialogue in paragraph 86.  He admits that

18  he did not state:  "the transactions with VL Capital in fact had no economic

19  substance and revenue should not have been recognized from them."  Mr. Tekulve

20  is without sufficient information or knowledge as to whether this call took place at

21  about 1:30 p.m. Pacific Time or whether he edited some of the script "earlier that

22  day" and on that basis denies those allegations.  Except as so admitted, Mr. Tekulve

23  denies each and every allegation in paragraph 86.

24          87.     Mr. Tekulve is without sufficient information or knowledge as

25  to the allegations in paragraph 87 and on that basis denies those allegations.

26          88.     Mr. Tekulve is without sufficient information or knowledge as

27  to the allegations in paragraph 88 and on that basis denies those allegations.

28          89.     Mr. Tekulve states that he is without sufficient information or

1  knowledge regarding the allegations concerning Mr. Jensen in paragraph 89 and

2  therefore denies those allegations.  Mr. Tekulve otherwise admits paragraph 89.

3          90.     Mr. Tekulve admits paragraph 90.

4          91.     Mr. Tekulve admits the first, second, and third sentences in

5  paragraph 91.  Mr. Tekulve admits that the restatement stated "Set below is a

6  summary of the significant determinations regarding the restatement" and that the

7  restatement included the following language:

8          a.      Regarding a transaction in the quarter ended March 31,

9                  2006, based on a unit purchase agreement dated March

10                 30, 2006, "Based on its review, the Company has

11                 concluded that it should have recognized 10% of the

12                 transaction amount, or $0.2 million in the quarter ended

13                 June 30, 2006 when the transaction document was

14                 completed and executed, and that it should recognize the

15                 remaining $1.3 million as revenues upon collection."

16         b.      Regarding a purchase order in the third quarter of 2006,

17                 "the terms of the purchase order did not specify the

18                 shipping date for the units, the supplier never specified a

19                 shipping date and the units were never shipped.  In

20                 addition, the customer claimed a right of return which the

21                 Company disputes.  The transaction is being restated and

22                 the revenues reversed in the amount of $0.1 million and

23                 $0.6 million in 2007 and 2006, respectively."

24         c.      Regarding the VLC and WSS transactions, "The

25                 Company has concluded that the financial statements of

26                 VLC and WSS should be consolidated with those of the

27                 Company in accordance with FIN 46(R).  This analysis is

28                 based on the fact that the structure of the transactions with

1                VLC and WSS did not effectively transfer sufficient risk

2                to the other parties to the transactions, leaving the

3                Company with the majority of the risks.  In addition, in

4                the transactions with WSS, the contract conditions of the

5                transactions were not fulfilled.  As a result, the Company

6                incorrectly recognized revenues from these transactions."

7        Mr. Tekulve further admits that on February 10, 2009, Basin's stock

8  price closed at $0.96, up one cent from the previous day's close.  Except as so

9  admitted, Mr. Tekulve denies each and every allegation in paragraph 91.

10        92.    Answering paragraph 92, Mr. Tekulve incorporates by reference

11  paragraphs 1 through 91 above.

12        93.    Paragraph 93 is a statement of plaintiffs' legal position, to which

13  no response is necessary or appropriate.  To the extent that a responsive pleading is

14  required, and to the extent that the allegations set forth in paragraph 93 are made

15  against Mr. Tekulve, Mr. Tekulve denies the allegations set forth in paragraph 93.

16  To the extent that the allegations set forth in paragraph 93 are made against Mr.

17  Jensen, Mr. Tekulve is without knowledge or information sufficient to form a belief

18  as to the truth of the allegations, and on that basis denies those allegations.

19        94.    Paragraph 94 is a statement of plaintiffs' legal position, to which

20  no response is necessary or appropriate.  To the extent that a responsive pleading is

21  required, and to the extent that the allegations set forth in paragraph 94 are made

22  against Mr. Tekulve, Mr. Tekulve denies the allegations set forth in paragraph 94.

23  To the extent that the allegations set forth in paragraph 94 are made against Mr.

24  Jensen, Mr. Tekulve is without knowledge or information sufficient to form a belief

25  as to the truth of the allegations, and on that basis denies those allegations.

26        95.    Answering paragraph 95, Mr. Tekulve incorporates by reference

27  paragraphs 1 through 91 above.

28        96.    Paragraph 96 is a statement of plaintiffs' legal position, to which

1   no response is necessary or appropriate.  To the extent that a responsive pleading is

2   required, and to the extent that the allegations set forth in paragraph 96 are made

3   against Mr. Tekulve, Mr. Tekulve denies the allegations set forth in paragraph 96.

4   To the extent that the allegations set forth in paragraph 96 are made against Mr.

5   Jensen, Mr. Tekulve is without knowledge or information sufficient to form a belief

6   as to the truth of the allegations, and on that basis denies those allegations.

7        97.    Paragraph 97 is a statement of plaintiffs' legal position, to which

8   no response is necessary or appropriate.  To the extent that a responsive pleading is

9   required, and to the extent that the allegations set forth in paragraph 97 are made

10  against Mr. Tekulve, Mr. Tekulve denies the allegations set forth in paragraph 97.

11  To the extent that the allegations set forth in paragraph 97 are made against Mr.

12  Jensen, Mr. Tekulve is without knowledge or information sufficient to form a belief

13  as to the truth of the allegations, and on that basis denies those allegations.

14       98.    Paragraph 98 is a statement of plaintiffs' legal position, to which

15  no response is necessary or appropriate.  To the extent that a responsive pleading is

16  required, and to the extent that the allegations set forth in paragraph 98 are made

17  against Mr. Tekulve, Mr. Tekulve denies the allegations set forth in paragraph 98.

18  To the extent that the allegations set forth in paragraph 98 are made against Mr.

19  Jensen, Mr. Tekulve is without knowledge or information sufficient to form a belief

20  as to the truth of the allegations, and on that basis denies those allegations.

21       99.    Answering paragraph 99, Mr. Tekulve incorporates by reference

22  paragraphs 1 through 91 above.

23       100.   Paragraph 100 is a statement of plaintiffs' legal position, to

24  which no response is necessary or appropriate.  To the extent that a responsive

25  pleading is required, and to the extent that the allegations set forth in paragraph 100

26  are made against Mr. Tekulve, Mr. Tekulve denies the allegations set forth in

27  paragraph 100.  To the extent that the allegations set forth in paragraph 100 are

28  made against Mr. Jensen, Mr. Tekulve is without knowledge or information

1    sufficient to form a belief as to the truth of the allegations, and on that basis denies
2    those allegations.

3         101.   Paragraph 101 is a statement of plaintiffs' legal position, to
4    which no response is necessary or appropriate.  To the extent that a responsive
5    pleading is required, and to the extent that the allegations set forth in paragraph 101
6    are made against Mr. Tekulve, Mr. Tekulve denies the allegations set forth in
7    paragraph 101.  To the extent that the allegations set forth in Paragraph 101 are
8    made against Mr. Jensen, Mr. Tekulve is without knowledge or information
9    sufficient to form a belief as to the truth of the allegations, and on that basis denies
10   those allegations.

11        102.   Paragraph 102 is a statement of plaintiffs' legal position, to
12   which no response is necessary or appropriate.  To the extent that a responsive
13   pleading is required, and to the extent that the allegations set forth in paragraph 102
14   are made against Mr. Tekulve, Mr. Tekulve denies the allegations set forth in
15   paragraph 102.  To the extent that the allegations set forth in paragraph 102 are
16   made against Mr. Jensen, Mr. Tekulve is without knowledge or information
17   sufficient to form a belief as to the truth of the allegations, and on that basis denies
18   those allegations.

19        103.   Paragraph 103 is a statement of plaintiffs' legal position, to
20   which no response is necessary or appropriate.  To the extent that a responsive
21   pleading is required, and to the extent that the allegations set forth in paragraph 103
22   are made against Mr. Tekulve, Mr. Tekulve denies the allegations set forth in
23   paragraph 103.  To the extent that the allegations set forth in paragraph 103 are
24   made against Mr. Jensen, Mr. Tekulve is without knowledge or information
25   sufficient to form a belief as to the truth of the allegations, and on that basis denies
26   those allegations.

27        104.   Answering paragraph 104, Mr. Tekulve incorporates by
28   reference paragraphs 1 through 91 above.

105.   Paragraph 105 is a statement of plaintiffs' legal position, to which no response is necessary or appropriate.  To the extent that a responsive pleading is required, and to the extent that the allegations set forth in paragraph 105 are made against Mr. Tekulve, Mr. Tekulve denies the allegations set forth in paragraph 105.  To the extent that the allegations set forth in paragraph 105 are made against Mr. Jensen, Mr. Tekulve is without knowledge or information sufficient to form a belief as to the truth of the allegations, and on that basis denies those allegations.

106.   Answering paragraph 106, Mr. Tekulve incorporates by reference paragraphs 1 through 91 above.

107.   Paragraph 107 is a statement of plaintiffs' legal position, to which no response is necessary or appropriate.  To the extent that a responsive pleading is required, Mr. Tekulve denies the allegations set forth in paragraph 107.

108.   Paragraph 108 is a statement of plaintiffs' legal position, to which no response is necessary or appropriate.  To the extent that a responsive pleading is required, Mr. Tekulve denies the allegations set forth in paragraph 108.

109.   Answering paragraph 109, Mr. Tekulve incorporates by reference paragraphs 1 through 91 above.

110.   Paragraph 110 is a statement of plaintiffs' legal position, to which no response is necessary or appropriate.  To the extent that a responsive pleading is required, and to the extent that the allegations set forth in paragraph 110 are made against Mr. Tekulve, Mr. Tekulve denies the allegations set forth in paragraph 110.  To the extent that the allegations set forth in Paragraph 110 are made against Mr. Jensen, Mr. Tekulve is without knowledge or information sufficient to form a belief as to the truth of the allegations, and on that basis denies those allegations.

111.   Paragraph 111 is a statement of plaintiffs' legal position, to which no response is necessary or appropriate.  To the extent that a responsive

1   pleading is required, and to the extent that the allegations set forth in paragraph 111

2   are made against Mr. Tekulve, Mr. Tekulve denies the allegations set forth in

3   paragraph 111.  To the extent that the allegations set forth in Paragraph 111 are

4   made against Mr. Jensen, Mr. Tekulve is without knowledge or information

5   sufficient to form a belief as to the truth of the allegations, and on that basis denies

6   those allegations.

7          112.   Answering paragraph 112, Mr. Tekulve incorporates by

8   reference paragraphs 1 through 91 above.

9          113.   Paragraph 113 is a statement of plaintiffs' legal position, to

10  which no response is necessary or appropriate.  To the extent that a responsive

11  pleading is required, and to the extent that the allegations set forth in paragraph 113

12  are made against Mr. Tekulve, Mr. Tekulve denies the allegations set forth in

13  paragraph 113.  To the extent that the allegations set forth in Paragraph 113 are

14  made against Mr. Jensen, Mr. Tekulve is without knowledge or information

15  sufficient to form a belief as to the truth of the allegations, and on that basis denies

16  those allegations.

17         114.   Paragraph 114 is a statement of plaintiffs' legal position, to

18  which no response is necessary or appropriate.  To the extent that a responsive

19  pleading is required, Mr. Tekulve is without knowledge or information sufficient to

20  form a belief as to the truth of the allegations, and on that basis denies the

21  allegations set forth in paragraph 114.

22         115.   Paragraph 115 is a statement of plaintiffs' legal position, to

23  which no response is necessary or appropriate.  To the extent that a responsive

24  pleading is required, and to the extent that the allegations set forth in paragraph 115

25  are made against Mr. Tekulve, Mr. Tekulve denies the allegations set forth in

26  paragraph 115.  To the extent that the allegations set forth in Paragraph 115 are

27  made against Mr. Jensen, Mr. Tekulve is without knowledge or information

28  sufficient to form a belief as to the truth of the allegations, and on that basis denies

1     those allegations.

2     **<u>AFFIRMATIVE DEFENSES</u>**

3     As further and separate defenses to the Complaint, and each cause of

4     action pled therein, Mr. Tekulve alleges the following:

5     <u>FIRST AFFIRMATIVE DEFENSE</u>

6     (Failure to State a Claim)

7     The Complaint, and each cause of action alleged therein against Mr.

8     Tekulve, fails to state a claim upon which relief can be granted.

9     <u>SECOND AFFIRMATIVE DEFENSE</u>

10     (Statute of Limitations)

11     The relief sought against Mr. Tekulve is barred in whole or in part by

12     the applicable statute(s) of limitation.

13     <u>THIRD AFFIRMATIVE DEFENSE</u>

14     (No Scienter)

15     Any allegedly untrue statements of material fact, omissions of material

16     fact, misleading statements, or other actions allegedly undertaken by Mr. Tekulve

17     were inadvertent and/or were made wholly without scienter.

18     <u>FOURTH AFFIRMATIVE DEFENSE</u>

19     (No Inducement)

20     Mr. Tekulve did not directly or indirectly induce the act or acts

21     constituting the alleged violations and causes of action outlined in the Complaint.

22     <u>FIFTH AFFIRMATIVE DEFENSE</u>

23     (Good Faith)

24     Plaintiff's claims are barred in whole or in part because Mr. Tekulve

25     acted at all times in good faith and/or did not know, and in the exercise of

26     reasonable care could not have known, or had any reasonable grounds to believe,

27     that any misstatements or omissions of material fact existed in any statements,

28     reports, and/or filings allegedly issued by defendants, and therefore, pursuant to

ANSWER CV11-05316R (AGRX)

1  Section 23(a) of the Exchange Act, there is no liability for any act or omission so

2  alleged.

### SIXTH AFFIRMATIVE DEFENSE

#### (Reliance on Other Professionals and Experts)

5          In executing or authorizing the execution and/or publication of any

6  document containing the statements complained of in the Complaint, Mr. Tekulve

7  was entitled to, and did, reasonably and in good faith, rely upon the work and

8  conclusions of other professionals and experts.

### SEVENTH AFFIRMATIVE DEFENSE

#### (Compliance with Policy and Procedure)

11         Throughout the relevant period, Mr. Tekulve complied with Basin

12  Water's policies and procedures in his capacity as Chief Financial Officer of Basin

13  Water.

### EIGHTH AFFIRMATIVE DEFENSE

#### (Estoppel)

16  The SEC's claims are barred by the doctrine of estoppel.

### NINTH AFFIRMATIVE DEFENSE

#### (Waiver)

19  The SEC's claims are barred by the doctrine of waiver.

### TENTH AFFIRMATIVE DEFENSE

#### (Bad Faith)

22         The SEC is barred from recovery of damages or any other relief

23  because it or the party it seeks to "reimburse" acted in bad faith.

### ELEVENTH AFFIRMATIVE DEFENSE

#### (No Damages)

26         Neither the SEC nor the party the SEC purports to seek to "reimburse"

27  have suffered any damages.

28

1

## TWELFTH AFFIRMATIVE DEFENSE

2

(Unjust Enrichment)

3        The SEC cannot recover damages because any such recovery would be

4 a windfall resulting in unjust enrichment to the SEC or to the party the SEC

5 purports to seek to "reimburse."

6

## THIRTEENTH AFFIRMATIVE DEFENSE

7

(Unclean Hands)

8        The SEC's claims are abated or abated substantially because the SEC

9 or the party the SEC claims to seek to "reimburse" is guilty of unclean hands.

10

## FOURTEENTH AFFIRMATIVE DEFENSE

11

(Laches)

12        The SEC's claims are barred, in whole or in part, by the doctrine of

13 laches.

14

## FIFTEENTH AFFIRMATIVE DEFENSE

15

(Adequacy of Remedy At Law)

16        The SEC's claim for "reimbursement" fails because there exists an

17 adequate remedy at law.

18

## SIXTEENTH AFFIRMATIVE DEFENSE

19

(Failure to Join an Indispensable Party)

20        The SEC's claims fail because it has failed to join an indispensable

21 party.

22

## SEVENTEENTH AFFIRMATIVE DEFENSE

23

(Forfeiture)

24        The SEC's claims fail because the Complaint seeks an impermissible

25 forfeiture.

26

27

28

ANSWER CV11-05316R (AGRX)

1

<u>EIGTHEENTH AFFIRMATIVE DEFENSE</u>

2

(Lack of Real Party in Interest)

3   The SEC's claim for "reimbursement" fails for lack of a real party in

4   interest who either is a party to or may be made a party to the claim.

5

<u>NINETEENTH AFFIRMATIVE DEFENSE</u>

6

(Usury)

7   The SEC's claims fails because it constitutes usury, or amounts to an

8   usurious penalty.

9

<u>TWENTIETH AFFIRMATIVE DEFENSE</u>

10

(Unconstitutionality)

11   The SEC's claim fails because the relief it seeks violates the federal

12   and state constitutions.

13

<u>TWENTY-FIRST AFFIRMATIVE DEFENSE</u>

14

(Right to Assert Additional Defenses)

15   Additional facts may be revealed by future discovery which support

16   additional affirmative defenses presently available to, but unknown to, Mr.

17   Tekulve.  Therefore, Mr. Tekulve reserves the right to assert additional defenses in

18   the event that investigation and discovery indicate that additional defenses are

19   appropriate.

20

**<u>PRAYER FOR RELIEF</u>**

21   WHEREFORE, Mr. Tekulve prays for judgment against the plaintiff

22   as follows:

23   1.   That plaintiff take nothing by reason of its Complaint on file

24   herein;

25   2.   That judgment be entered in favor of Mr. Tekulve on each

26   count, and that the Complaint be dismissed with prejudice.

27   3.   That Mr. Tekulve recover his costs and expenses incurred in

28   defending this action, including reasonable attorneys' fees, as are allowed by

ANSWER CV11-05316R (AGRX)

1   applicable law; and

2           4.      That the Court grants such other and future relief as it deems

3   just and proper.

4

5         Dated:        August 1, 2011        Respectfully submitted,

6                                    O'MELVENY & MYERS LLP

7

8                                 By:  /s/  Seth Aronson

9                                    Seth Aronson
                                 Attorney for Defendant

10                                 THOMAS C. TEKULVE, JR.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **JURY DEMAND**

Defendant Mr. Tekulve hereby requests a trial by jury in the above entitled action as to all issues which are triable by jury.

Dated:      August 1, 2011          Respectfully submitted,

O'MELVENY & MYERS LLP


By:  /s/ Seth Aronson

Seth Aronson
Attorney for Defendant
THOMAS C. TEKULVE, JR.