UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | CASE NO. CV 11-5316-R |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE PROFESSOR HAYN'S EXPERT TESTIMONY, PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE PROFESSOR BEAVER'S EXPERT TESTIMONY, AND DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE ANY REFERENCE TO NINE MILLION DOLLARS IN PROCEEDS |
| vs. | |
| PETER L. JENSEN and THOMAS C. TEKULVE, JR., | |
| Defendants. | |

### I. Background

Plaintiff Securities and Exchange Commission ("Plaintiff" or the "SEC") alleges that Defendants engaged in a two-year fraudulent scheme to materially inflate the revenues of Basin Water, and that Basin's CEO, Defendant Peter Jensen ("Defendant"), made over nine million dollars profit by selling Basin shares based on inside information regarding Basin's true financial condition. The SEC's expert, Professor Carla Hayn, conducted an event study that purportedly reflects the effect that an August 11, 2008 press release – indicating Basin may have to restate certain financial statements as a result of revenue recognition issues – had on the value of Basin's stock price.

Defendant submitted expert testimony from Professor William Beaver who purportedly calculated what Defendant would have profited if Basin's true financial condition was revealed in

the first instance, without any need for the press release and subsequent restatement. To do so, Professor Beaver utilized a regression analysis that he opines is far more accurate than a standard event study, even though it has not attained the same level of general acceptance within the scientific community. Further, he opines it is altogether inappropriate to use an event study under the circumstances of this case.

The SEC filed a Motion *In Limine* to exclude Professor Beaver's opinions, arguing they do not meet the requirements of Federal Rule of Evidence 702 for three reasons. First, they do not meet the threshold for introduction of expert testimony because they do not help the trier of fact understand the evidence or to determine a fact in issue. Second, these opinions are not the product of reliable methods or principles. Third, Professor Beaver has not reliably applied the principles and methods he uses to the facts of this case.

Defendant filed a competing Motion *In Limine* to exclude Professor Hayn's opinions concerning her event study under Rule 702, arguing that an event study cannot be accurately applied to the facts of this case. Further, even if an event study could be utilized here, Professor Hayn failed to properly conduct the event study. Defendant also filed a separate Motion *In Limine* to prohibit the SEC from referencing Defendant's alleged nine million dollar profits. Defendant contends, as evidenced by the opinions of both experts, the nine million dollar figure does not reflect the effect of Defendant's alleged misrepresentations and is therefore irrelevant or at least unduly prejudicial.

Notably, Defendant also moved to exclude Professor Hayn's price earnings ratio analysis, which was offered in rebuttal to Professor Beaver's report. However, the SEC voluntarily withdrew that portion of Professor Hayn's rebuttal opinions. Professor Hayn also offered opinions relating to whether the various transactions at issue in this case were correctly accounted for, which are not a subject of the *Daubert* motions under consideration by the Court.

As discussed below, both experts' opinions must be excluded as the Court finds that they do not assist the trier of fact and otherwise create a danger of confusing the issues, misleading the jury, causing undue delay, and wasting time. Thus, the parties' cross motions to exclude each other's experts' opinions are granted for those reasons. Defendant's motion concerning any

reference to nine million dollars is also granted because that figure is arguably irrelevant, and the probative value of any reference thereto is substantially outweighed by its prejudicial effect.

## II. Legal Standard

### A. Federal Rule of Evidence 702

Federal Rule of Evidence 702 provides that expert testimony is admissible if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Expert testimony under Rule 702 must be both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 589 (1993). When considering evidence proffered under Rule 702, the trial court must act as a "gatekeeper" by making a preliminary determination that the expert's proposed testimony is reliable. *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002), *amended by* 319 F.3d 1073 (9th Cir. 2003). "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can be applied to the facts in issue." *Daubert*, 509 U.S. at 579. The trial court must determine that the experts based their conclusions on scientific methods and procedures rather than mere subjective beliefs or unsupported speculation. These preliminary questions must be established by a preponderance of the proof. *Id*. Yet, the trial court must scrutinize an expert's reasoning and methods without inquiring into the soundness of the expert's conclusions. *Claar v. Burlington N. R.R. Co*., 29 F.3d 499, 501 (9th Cir. 1994).

As a guide for assessing the scientific validity of expert testimony, the Supreme Court provided a non-exhaustive list of factors that courts may consider: (1) whether the theory or technique is generally accepted within a relevant scientific community, (2) whether the theory or technique has been subjected to peer review and publication, (3) the known or potential rate of error, and (4) whether the theory or technique can be tested. *Daubert*, 509 U.S. at 593-94. The Ninth Circuit also has indicated that independent research, rather than research conducted for the purposes of litigation, carries with it the indicia of reliability. *See Daubert v. Merrell Dow Pharmaceuticals, Inc*., 43 F.3d 1311, 1317 (9th Cir. 1995) ( "*Daubert II*"). In particular, using independent, pre-existing research "provides objective proof that the research comports with the

dictates of good science" and is less likely "to have been biased by the promise of remuneration." *Id*. If the testimony is not based on "pre-litigation" research or if the expert's research has not been subjected to peer review, then the expert must explain precisely how he went about reaching his conclusions and point to some objective source – a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like, to show that he has followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in his field. *Id*. at 1318-19 (citing *United States v. Rincon*, 28 F.3d 921, 924 (9th Cir. 1994)); *see also Lust v. Merrell Dow Pharmaceuticals, Inc*., 89 F.3d 594, 597 (9th Cir. 1996). The proponent of the evidence must prove its admissibility by a preponderance of proof. *See Daubert*, 509 U.S. at 593 n. 10.

The list of factors for determining reliability are not exclusive because the test is flexible to fit the subject matter. *Id*. at 141, 150, and 153. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *G.E., Inc. v. Joiner*, 522 U.S. 136, 146 (1997). Nonetheless, expert testimony is liberally admitted under the Federal Rules. *Daubert*, 509 U.S. at 588, (noting that Rule 702 is part of the "liberal thrust of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony") (internal quotations omitted). The trial court must be careful to avoid supplanting the adversary system or the role of the jury: "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id*. at 596; *see also* Fed. R. Evid. 702 advisory committee notes to 2000 amendments ("[R]ejection of expert testimony is the exception rather than the rule.").

### B. Federal Rule of Evidence 403

Federal Rule of Evidence 403 provides that evidence, although relevant, may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, waste of time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. This is a balancing test left to the sound discretion of the trial court. *See, e.g., Maddox v. Los Angeles*, 792 F.2d 1408, 1417-18 (9th Cir. 1986).

4

In determining whether to exclude evidence under Rule 403, the court should consider the probative value of the evidence and should evaluate the relative weight of these factors as to the evidence in question as well as to actually available substitute evidence, stipulations, etc.  If there is alternative evidence with substantially the same or greater probative value as the proffered evidence but with a lower danger of unfair prejudice, exercise of a sound judicial discretion would discount the value of the proffered item and exclude the proffered evidence if its discounted probative value were substantially outweighed by unfairly prejudicial risk.  Such a weighing should be made in view of the availability of other facts appropriate to the Rule 403 determination as well as with an appreciation of the offering party's need for "evidentiary richness and narrative integrity in presenting a case . . . ."  *Old Chief v. United States*, 519 U.S. 172, 182-83 (9th Cir. 1997) (citing, *inter alia*, the advisory committee notes to Rule 403).

### III. The Expert's Opinions Are Inadmissible at Trial Under Federal Rules of Evidence 702 and 403

As a threshold matter, an expert witness must possess "sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999) (citation omitted).  The proponent of the witness bears the burden of establishing an expert's helpfulness.  Here, the Court finds that neither Professor Hayn's event study nor Professor Beaver's regression analysis is helpful to the jury in understanding the evidence or in determining a fact in issue.  Further, the opinions' probative values are substantially outweighed by a danger of confusing the issues, misleading the jury, causing undue delay, and wasting time.  These opinions, however, will be admissible at the damages phase of this action.

#### A. Summary of Professor Hayn's Event Study

"An event study is a statistical regression analysis that examines the effect of an event on a dependent variable, such as a corporation's stock price."  *In re Imperial Credit Indus. Sec. Litig.*, 252 F. Supp. 2d 1005, 1014 (C.D. Cal. 2003) (internal citations and quotations omitted).  "While event study techniques have become more sophisticated over the years, their basic format and methodology have not materially changed."  *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse First Boston*, 853 F. Supp. 2d 181, 186 (D. Mass. 2012) (discussing a conventional

securities fraud event study). Professor Hayn utilized an event study to measure the magnitude of the price drop in Basin stock associated with the August 11, 2008 press release. Briefly, Professor Hayn concluded that the August 11, 2008 press release decreased the value of Basin's stock at least 35%, approximately 3.5 million dollars.

### B. Summary of Professor Beaver's Response Coefficient Analysis

Unlike event study methodology, Professor Beaver's method is not as widely accepted in the scientific community, and Defendant could not provide any cases discussing its application. Nonetheless, Professor Beaver purports to have estimated the value of the portion of Defendant's stock sales that are attributable to the difference between the restated results for the transactions at issue and those originally reported. To do so, he applied earning response coefficients derived from five statistical models to three different scenarios. The statistical models measure the relation between companies' earnings and their stock prices; four of the models were obtained from academic literature published prior to the filing of this case and the fifth was developed from Professor Beaver's study of firms comparable to Basin Water. The three scenarios reflect different combinations of alleged misrepresentations for which Defendant may be found liable. Application of the coefficients to each scenario produced estimates of stock price inflation ranging from $20,622 to $1,143,678. Professor Beaver opined that the median of these estimates, $411,106, is the most reasonable reflection of what the additional value in Basin Water stock would have been had the restated results been reported originally, because the median accounts for all of the factors reflected in each of the five statistical models.

### C. The Experts' Opinions Should Be Excluded Under Federal Rule of Evidence 702

The Court finds that the experts' opinions will not assist the trier of fact and are not a good fit for the issues to be presented at trial. An event study is an accepted method of measuring the impact of alleged securities fraud on a stock price and often plays a "pivotal" role in proving loss causation and damages in a securities fraud case. *In re Williams Sec. Litig.*, 496 F. Supp. 2d 1195, 1272 (N.D. Okla. 2007). Likewise, Professor Beaver's methods are – apparently – typically used to estimate damages in shareholder litigation; indeed, the only article identified by Defendant that

6

discusses Professor Beaver's method argues that estimates of financial fraud damages obtained through the use of response coefficients are superior to event studies. *See* Esther Bruegger and Frederick C. Dunbar, *Estimating Financial Fraud Damages with Response Coefficients*, 35 Iowa J. Corp. L. 11, 12 (2009).

However, the SEC, unlike a private plaintiff, need not demonstrate reliance and loss causation. *See SEC v. Leslie*, 2010 U.S. Dist. LEXIS 76826 at *93 (N.D. Cal. July 29, 2010). Instead, the SEC claims it is offering Professor Hayn's opinions as evidence of materiality and motive. But the SEC contradicts its own position by arguing that Professor Beaver's opinions should be excluded because they only relate to the amount of disgorgement of Defendant's ill-gotten gains and the amount of reimbursement of profits – two issues to be determined by the Court at the remedies stage of this case, not by the jury at the liability stage. Highlighting the SEC's conflicting positions, Defendant argues that Professor Beaver's opinions must be admitted to challenge the SEC's theory of motive by showing that the alleged inflation was relatively minimal and thus hardly a reason to commit securities fraud.

The Court finds, however, that expert testimony is not required to show that the stock price drop is probative of materiality in this case. "[I]f the Government wishes to use a stock price drop as evidence of materiality, it must demonstrate that public disclosure of the misstatements charged in the indictment had an appreciable negative effect on the stock price." *United States v. Schiff*, 538 F. Supp. 2d 818, 835 (D.N.J. 2008) (internal citation omitted). There is no dispute that the August 11, 2008 press release had an appreciable negative effect on Basin's stock price; even Professor Beaver admits that, if the information had been properly disclosed in the first place, without any need for a restatement, there would have been an appreciable negative effect on the stock price in the amount of $411,106. Expert analysis is not required to draw an inference that after-the-fact admissions of accounting errors have a greater, negative impact on stock price than the impact of accurate financial statements. Granted, expert testimony may be required to establish that a stock price drop is linked to the alleged misconduct in cases where there are multiple factors, such as confounding disclosures, potentially contributing to the drop. *See, e.g., Schiff*, at 837. But the Court finds that assessing the materiality of the confounding factors in this

7

case, if any, does not require scientific, technical, or other specialized knowledge. *Cf. United States v. Ferguson*, 2007 U.S. Dist. LEXIS 93355, 6-7 (D. Conn. Dec. 20, 2007) (admitting lay opinion testimony from analysts regarding whether their valuation of the company would have been different if they had known about the allegedly misstated loss reserves). Therefore, evidence of the stock price drop may be admitted without requiring expert analysis.

### D. The Experts' Opinions Should Be Excluded Under Federal Rule of Evidence 403

The Court also recognizes that measuring the exact amount of the stock inflation may have some probative value as to Defendant's motive or a lack thereof. But the probative value of such evidence is substantially outweighed by the danger of confusing the issues, misleading the jury, undue delay, and wasting time. *See* Fed. R. Evid. 403. Both parties have alternate evidence bearing on Defendant's motive; namely, there are genuine disputes in this case concerning whether any accounting violations were committed negligently or intentionally and both parties will be presenting expert evidence in support of their respective theories. Thus, the Court finds that excluding these expert opinions from trial will not interfere with either party's need for evidentiary richness and narrative in presenting the case.

### E. The Experts' Opinions Will Be Admissible in the Remedies Phase

Although the Court concludes that the experts' opinions will not assist the trier of fact at the liability stage, they will assist the Court at the remedies phase. The experts' opinions relate to two issues concerning remedies – the amount of disgorgement of Jensen's ill-gotten gains as a result of his fraudulent insider trading, and the amount of reimbursement of profits realized by Jensen's securities sales that must be reimbursed under Sarbanes Oxley Act, Section 304.

The SEC contends that Proessor Beaver's method is unreliable because it has not appeared in any case law and has only been cited and reviewed by inapplicable sources. However, at the *Daubert* hearing, Professor Beaver identified an article published in 2009 that discusses the benefits of his method, especially compared to an event study. *See generally* Dunbar, *supra*, 35 Iowa J. Corp. L. 11. Professor Beaver also identified several experts who have defended this method at deposition or otherwise. Further, in addition to pointing to an article in a reputable

journal, Professor Beaver methodically explained "precisely how he went about reaching his conclusions." *Daubert II,* 43 F.3d at 1318-19 (internal citations omitted). Although the SEC contends that law review articles are typically not subject to peer review, "shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citing *Daubert*, 509 U.S. at 596)). Thus, the Court finds that Defendant has proved the admissibility of Professor Beaver's opinions by a preponderance of proof for the purpose of assessing remedies. *See Daubert*, 509 U.S. at 593 n. 10.

Concerning Professor Hayn's event study, Defendant contends that it is not a reliable method for measuring remedies in this case. However, even the article cited by Defendant – that is critical of event studies – acknowledges that they are generally accepted by both the academic community and the courts as a reliable principle or method for determining whether a particular announcement by a company has caused the price of the company's stock to decline:

> Event studies are widely used in litigation to measure the effect of alleged misconduct by examining the share price impact of relevant disclosures. The event study method is commonly used in securities litigation for estimating the share price impact of events because it meets scientific standards. These standards include the following: it provides testable results that may be replicated by other analysts; it is supported by published literature; it produces estimates with a known rate of statistical error; and it has generally been accepted by the scientific community.

Dunbar, 35 Iowa J. Corp. L. at 16 (internal citations omitted).

Still, Defendant asks the Court to engage in what have been "heated disputes among experts over what was meant by proper application of the method." *Id*. at 13. Specifically, Defendant points out that the information in the press release indicated a need to restate multiple past financial statements, but the event study does not attempt to isolate inflation per share, before the various accounting violations had accumulated. Defendant also contends that an event study cannot account for confounding information that would have a negative impact on the stock price. Finally, Defendant contends that Professor Hayn improperly utilized a three day event window instead of a one day event window.

Notably, Professor Hayn contends she considered all of the information in the press release but her interpretation is that all of the negative information is related to the restatement. And Defendant did not cite any case law expressly limiting an event study to a one day window and the article he relies on in admitting his own expert's opinions supports the use of a three day window. *See* Dunbar, 35 Iowa J. Corp. L. at 48 ("For causal analysis, academics have converged to using shorter event windows when estimating ERCs, usually one to three days.").

Considering the factors enumerated in *Daubert*, Professor Hayn's event study is admissible. Defendants have not identified any other authority that definitively mandates its exclusion. Thus, these opinions will be admissible at the damages phase of this matter.

### F. **Defendant's Motion *In Limine* to Exclude Any Reference to Nine Million Dollars**

Defendant argues the SEC should be prohibited from referencing his alleged nine million dollar profits because, as evidenced by the opinions of both experts, the nine million dollar figure does not reflect the effect of Defendant's alleged misrepresentations. The Court agrees. Thus, any reference to nine million dollars in profits is prohibited under Federal Rule of Evidence 401 as it is irrelevant, and under Federal Rule of Evidence 403 as its probative value is outweighed by a danger of unfair prejudice and confusing the issue of violations of SEC requirements.

**IT IS HEREBY ORDERED** that Defendant's Motion *In Limine* to Exclude Professor Carla Hayn's Expert Opinions, Plaintiff's Motion *In Limine* to Exclude Professor William Beaver's Expert Opinions, and Defendant's Motion *In Limine* to Exclude All Argument or Reference to Nine Million Dollars in Proceeds From the Sale of Basin Shares are GRANTED.

Dated: March 13, 2013.

_____
MANUEL L. REAL
UNITED STATES DISTRICT JUDGE